NOT FOR PUBLICATION                                             (Doc. No. 16)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| RAYMOND WARD, | : |
| Plaintiff, | : Civil No. 1:10-CV-01880-RBK-KMW |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant United States of America's ("Defendant" or "United States") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 against Plaintiff Raymond Ward ("Plaintiff"). This Court has jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 1346(b) (West 2012) and 28 U.S.C. §§ 2671-80 (West 2012). For the following reasons, Defendant's motion is **DENIED**.

I.   BACKGROUND

Plaintiff was a truck driver working for W.B. Adams Trucking, Inc. ("Adams Trucking"), whose only business comes from Highway Contract Route ("HCR") contracts with the United States Postal Service ("USPS"). Def.'s Mot. Summ. J., Statement of Undisputed Material Facts ("SUMF") ¶¶ 1, 6. Pursuant to these contracts, Adams Trucking transports bulk mail between certain USPS facilities. SUMF ¶ 7. These

1

routes had traditionally been serviced by USPS employees, but at some point, USPS began contracting this work to outside vendors. Decl. Royale Ledbetter, ¶ 4. Plaintiff had been transporting mail for USPS since approximately 1985 as an employee of Adams Trucking. Pl.'s Supp. Statement of Material Facts ("SSMF") ¶ 1. Then, on May 10, 2007, Plaintiff was injured while unloading a pallet of mail from the back of a truck onto the platform of a scissor lift at the Somers Point, New Jersey post office. SUMF ¶ 19. After his injury, Plaintiff filed a worker's compensation claim through Adams Trucking's insurer. SUMF ¶ 20.

In accordance with the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, Plaintiff filed a Notice of Claim with the United States Postal Service, alleging that the Somers Point post office's scissor-lift platform was dangerous due to a missing safety chain. Plaintiff's administrative claim was denied on October 26, 2009. Plaintiff then brought the present suit in this Court on April 13, 2010. Doc. No. 1. Defendant moved for summary judgment on September 23, 2011. Doc. No. 16.

## II.     STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When the Court weighs the evidence presented, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

To determine whether summary judgment is appropriate in this case, the Court must determine whether Plaintiff's recovery is barred as a matter of law by the New Jersey Workmen's Compensation Act, N.J. Stat. Ann. § 34:15-1 ("the Act"). The Act, as

interpreted by the New Jersey Supreme Court, involves a five-factor test to determine whether a lent employee, such as Plaintiff, is eligible to bring a negligence claim against their borrowing employer.

### A.      Scope and Purpose of the Workmen's Compensation Act

Defendant argues that Plaintiff's recovery is barred under the Act because Plaintiff was an employee of both Adams Trucking and USPS.  Plaintiff replies that his claim is not barred by the Act because he was employed by only Adams Trucking; USPS was not his special employer.  Under the Act, a plaintiff is entitled to worker's compensation benefits from his employer regardless of fault, but is barred from suing his employer for negligence.  See Gore v. Hepworth, 720 A.2d 350, 353 (N.J. Super. Ct. App. Div. 1998).  "It is well settled under New Jersey law[, moreover,] that an employee may have two employers for purposes of the workmen's compensation scheme—a primary employer and a 'special' employer—and is barred from bringing a tort lawsuit against either employer."  Roma v. United States, 344 F.3d 352, 364 (3d Cir. 2003).

While the Act seeks primarily to protect employees who were injured in the workplace, a second important objective of the Act is to distribute the costs of accidents to consumers "as part of the cost of the product or service provided."  Santos v. Std. Havens, 541 A.2d 708, 712 (N.J. Super. Ct. App. Div. 1988).  "Thus, New Jersey courts have liberally construed the term 'employee' in the [Act] 'in order to bring as many cases as possible within [its] scope.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 244 (3d Cir. 2004).  The liberal construction is appropriate when a plaintiff seeks the protection of the Act as well as "when he attempts to have himself excluded from the coverage of the act."  Santos, 541 A.2d at 713 (quoting Rutherford v. Modern Transp. Co., 320 A.2d 522, 526

(N.J. Super. Ct. Law Div. 1974)). Plaintiff was not directly employed by USPS and now seeks to have himself excluded from the coverage of the Act. Plaintiff's negligence claims are barred only if USPS is considered his "special employer" under the statute.

## B.     The "Special Employer" Test

In their briefs, both parties acknowledge that "New Jersey has developed its special-employee doctrine by adopting the three-prong test recommended by Professor Larson for establishing a special-employment relationship." Volb v. Gen. Elec. Capital Corp., 651 A.2d 1002, 1004 (N.J. 1995) (quoting Blessing v. T Shriver & Co., 228 A.2d 711, 711 (N. J. Super. Ct. App. Div. 1967)). Professor Larson's special-employment-relationship test consists of three conjunctive prongs: "1) whether there is an express or implied contract for hire between the employee and the employer in question; 2) whether the work being performed by the employee is essentially the work of the employer in question; and 3) whether the employer has the right to control the details of the work." Volb, 651 A.2d at 1005 (quoting Blessing, 228 A.2d at 711) (emphasis added).

In addition to these three factors, courts have also found it useful to analyze two additional factors. These additional factors ask 4) whether the employer pays the employee's wages and benefits; and 5) whether the employer has the power to hire, discharge, or recall the employee. Blessing, 228 A.2d at 713, Marino, 358 F.3d at 244; Kelly v. Geriatric and Med. Servs., Inc., 671 A.2d 631, 633 (N.J. Super. Ct. App. Div.), aff'd o.b., 685 A.2d 943 (N.J. 1996); see also Antheunisse v. Tiffany & Co., Inc., 551 A.2d 1006, 1007 (N.J. Super. Ct. App. Div. 1988).

Under the Third Circuit's interpretation of New Jersey's special-employer test, no single factor is "necessarily dispositive, and not all five [factors] must be satisfied in

order for a special employment relationship to exist." Marino, 358 F.3d at 244 (citing Blessing, 228 A.2d at 711). While all factors should be weighed, "the New Jersey Supreme Court has emphasized that 'the most important factor in determining a special employee's status is whether the borrowing employer had the right to control the special employee's work . . . .'" Brogna v. United States, 2007 U.S. Dist. LEXIS 65092 at *15 (D.N.J. 2007) (citing Volb, 651 A.2d at 1005); see Blessing, 228 A.2d at 711 (the "sheer weight of authority is undoubtedly on the side of 'control.'"). On the other hand, the New Jersey appellate courts have generally required the satisfaction of each of the first three factors before finding a special employment relationship. As the New Jersey Supreme Court noted in adopting the test originally laid out by Professor Larson,

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) The employee has made a contract of hire, express or implied, with the special employer;
> (b) The work being done is essentially that of the special employer; and
> (c) The special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

Volb, 651 A.2d at 1005 (emphases added). This Court finds it informative that the test described in Volb requires a finding that the first three factors must be satisfied in conjunction before the borrowing employer falls within the scope of the New Jersey Workmen's Compensation Act. The Court now examines whether the facts of this case, considered in the light most favorable to Plaintiff as the non-moving party, satisfy the five factors.

**1. There was no express or implied contract between Plaintiff and USPS**

6

Defendant argues that an implied contract for hire existed between the Plaintiff and USPS because for more than twenty years, Plaintiff, through his contract with Adams Trucking, consented to drive for USPS.  In reply, Plaintiff contends that deliberate, informed, and explicit consent is required to find an implied or express contract.  Plaintiff contends further that his affidavit denying he was a USPS employee is the sole evidence in the record addressing whether Plaintiff considered himself a USPS employee.

New Jersey courts have explicitly held that "a showing of a deliberate and informed consent by the employee" is required to find that an express or implied contract existed.  Blessing, 228 A.2d at 716.  A contract for hire will be found only if "the employee consents to the special employment relationship . . . [and] voluntarily submit[s] to the employer's direction and control."  Roma, 344 F.3d at 364 (citing Antheunisse, 551 A.2d at 1008).  Although there is a written contract between Adams Trucking and USPS, the "employment agreement necessary under the Larson tests involves the limited subject of supervision for workers' compensation purposes" and, therefore, "the focus is not upon the relationship between the two corporations, but rather between plaintiff and each of his potential employers."  Kelly, 671 A.2d at 635.  The Appellate Division did acknowledge, however, that "consent to a new contract with a special employer may be implied from the employee's acceptance of the special employer's control and direction."  Pacenti v. Hoffman-La Roche, Inc., 584 A.2d 843, 845 (N.J. Super. Ct. App. Div. 1991).

Applying the law to the facts in this case, the Court holds that there was no express or implied contract for hire between Plaintiff and USPS.  First, it is uncontroverted that there was no express contract between the parties.  Although an implied contract may be formed verbally or by nonverbal conduct, the lent employee

7

must clearly have assented to direction and supervision by his temporary employer to find an implied contract.  Marino, 358 F.3d at 249 ("a 'showing of deliberate and informed consent by the employee' is necessary before a special employment relationship will be found."); Kelly, 671 A.2d at 634; Antheunisse, 551 A.2d at 1008.  Plaintiff has produced evidence in the record that he did not submit to the direction and control of USPS, and Defendant has not presented evidence to the contrary.  Pl.'s Decl. ¶¶ 4-6, 8-10.[1]  Lacking evidence of the necessary assent by Plaintiff, the first prong is not satisfied.

### 2. The work being done by Plaintiff was not essentially the work of USPS

Defendant next argues that the Plaintiff's work, which Defendant characterized as "transporting United States Mail between Post Offices," was essentially the work of USPS.  Def.'s Reply Br., p. 13.  In support of this argument, Defendant claims that before USPS contracted with Adams Trucking, Plaintiff's work was done by career postal employees.  Further, Defendant argues that contracting with Adams Trucking did not change the nature of the work as a "fundamental USPS enterprise."  Id.  Plaintiff replies that USPS "delegated the operation of transporting mail between Post Offices to WB Adams Trucking, Inc., not [to Plaintiff]."  Pl. Br. Opp. Summ. J., pp. 13-14.  Absent evidence to the contrary, Plaintiff claims, there is an inference that he was employed exclusively by Adams Trucking when he was executing Adams Trucking's contracts.  As discussed below, the Court finds that Plaintiff, in performing the work of both employers, was not performing essentially the work of USPS.

---

[1] Defendant correctly contends that "[Plaintiff]'s present statement, that he believed that he was 'solely employed' by Adams Trucking, patently does not resolve the legal question."  Plaintiff's statement does, however, provide an important factual basis to which we apply the law.

New Jersey cases analyzing which employer the work was being performed for generally fall into three categories. The first category is where the employee is doing the work that is the sole province of the borrowing employer. In these so-called "Manpower" cases, the borrowing employer is considered to be the special employer of the employee. See Marino, 358 F.3d at 247, n. 6. Antheunisse is an example of this type of arrangement, where the general employer was a temporary placement agency and the employee was doing work specific to Tiffany's, who was found to be a special employer. Antheunisse, 551 A.2d at 1006. Similarly, the Court in Kelly found that the defendant health-care facility was a special employer of the plaintiff, a nurse, since she performed the defendant's work of caring for patients rather than her general employer's business of supplying nurses to health care facilities on temporary assignments. Kelly, 671 A.2d at 633.

The second kind of arrangement occurs where an employee is doing work that is the sole province of his or her general employer. See Murin v. Frapaul Construction Co., 573 A.2d 989, 989 (N.J. Super. Ct. App. Div. 1990). In Murin, defendant construction company, who had rented a cement mixer, received plaintiff to operate the mixer in addition to the machine. Id. After plaintiff was subsequently injured at defendant's construction site, he sued. Id. The court found that defendant was not a special employer, in part because plaintiff was doing his general employer's work of operating cement mixers, not defendant's work of general construction. Id., 573 A.2d at 994. In the same vein, in Blessing, the Superior Court found that a security guard from a detective agency was not a special employee of a foundry for purposes of the Workmen's Compensation Act, in part because he was doing detective work, which was the province

9

of his general employer, instead of the foundry work of his purported special employer. Blessing, 228 A.2d at 717.

The third and most complicated type of arrangement is where the work can be considered the work of both the general and special employer. In Roma, the Third Circuit found that a firefighter who was injured while extinguishing a fire on behalf of another fire company was an employee of both fire departments. Roma, 344 F.3d at 365. There, the plaintiff was fighting a fire, which was the primary work of both his employer and the temporary employer. Id. It is in these cases, as Plaintiff notes, that there exists an "inference that the employee remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer." Murin, 573 A.2d at 993.

Here, Plaintiff was transporting mail for USPS, which is the sole business of USPS as well as the sole business of Adams Trucking. Def. Statement of Undisputed Material Facts, ¶ 6. Since transporting United States Mail is the work of both companies, the Court finds that the inference that Plaintiff remained in his general employment applies. Because Defendant cannot rebut this inference, the second factor militates against a finding that Plaintiff was a special employee of the USPS.

### 3. USPS had the right to control the details of Plaintiff's work

New Jersey courts and the Third Circuit have repeatedly held—and Plaintiff and Defendant agree—that the most important factor in the special employer test is whether the purported special employer has the right to control the details of the employee's work. Marino, 358 F.3d at 250 (citing Gore, 720 A.2d at 353-54); Volb, 651 A.2d at 1005. When arguing that he had no contract with USPS, Plaintiff raised a genuine

10

dispute of fact about whether USPS <u>actually</u> controlled his work. Pl.'s Decl. ¶¶ 4-6, 8-10. But the Courts have held, regarding the third prong, that:

> "[u]nder the 'right to control test,' the actual exercise of control is 'not as determinative as the <u>right</u> of control itself,' because, in many instances, 'the expertise of [that] employee precludes an employer from giving him any effective direction concerning the method he selects in carrying out his duties.'"

<u>Kelly</u>, 671 A.2d at 635 (quoting <u>Smith v. E.T.L. Enterprises</u>, 382 A.2d 939 (N.J. Super. Ct. App. Div. 1978)) (emphasis in original); <u>see</u> <u>Marino</u>, 358 F.3d at 253.

Here, Defendant has presented sufficient evidence to support its contention that USPS had the right to control Plaintiff's work. The specifications for the delivery and pickup of the mail under the HCR contract are extremely detailed and require drivers to follow strict guidelines. SUMF ¶ 11-13; Pl.'s Br. Opp., p. 15. Plaintiff's statements about receiving orders exclusively from Adams Trucking have no bearing on this factor. What is important is that USPS reserved important rights over the control of Plaintiff's work in USPS's contract with Adams Trucking. Plaintiff's claim that he worked independently, receiving no aid from USPS workers in fulfilling his duties, is similarly immaterial. The Court therefore finds that Defendant has satisfied the third prong by establishing that USPS had the right to control Plaintiff's work.

### 4. USPS paid Plaintiff's wages and benefits

The last two factors—whether USPS paid Plaintiff's wages and benefits and whether USPS had the right to hire or fire Plaintiff—are less important than the first three. <u>Walrond v. County of Somerset</u>, 888 A.2d 491, 497 (N.J. Super. Ct. App. Div. 2006). In fact, New Jersey courts have held that "this factor is not necessary for a determination that a special employment relationship exists." <u>Kelly</u>, 671 A.2d at 636; <u>see</u>

Volb, 651 A.2d at 1002; Antheunisse, 551 A.2d at 1006.  "[W]hile perhaps not viewed as being as important as the first three, [however, the last two factors] can nonetheless be helpful in resolving any doubt that may remain in close cases."  Marino, 358 F.3d at 253.  The New Jersey Superior Court recently noted that "[i]n every case we have been able to identify, where our courts have found a special employment relationship, the special employer paid the special employee directly or indirectly through fees to the general employer."  Walrond, 888 A.2d at 497.

Here, the Court finds that Plaintiff's wages and benefits were paid by USPS.  Although it is true that Adams Trucking paid Plaintiff's wages, it appears to the Court that the wages "came indirectly out of the fees paid by defendant for plaintiff's services."  Kelly, 671 A.2d at 636; see Antheunisse, 551 A.2d at 1006; Chickachop v. Manpower, Inc., 201 A.2d 90 (N.J. Super. Ct. Law Div. 1964).  Defendant has submitted a heavily redacted form, labeled "Highway Transportation Contract – Cost Worksheet") detailing the means by which USPS made payments to Adams Trucking under the contract.  Def.'s Mot. Summ. J., Ex. B ("Cost Worksheet").  Although the exact amounts are redacted, what the Court finds compelling is the line-by-line delineation on the Cost Worksheet detailing the costs paid by USPS to Adams Trucking.  That the Cost Worksheet includes a separate line for "Workman's Compensation," is sufficient to prove that USPS did pay Plaintiff's wages and benefits under the statute.  Defendant has therefore satisfied the fourth factor.

### 5. USPS had the right to hire or fire Plaintiff

The fifth factor in the special-employer test asks whether the purported special employer had the right to hire, fire, or recall the employee.  Marino, 358 F.3d at 244.

Both the Third Circuit Court of Appeals and New Jersey appellate courts have held that the right to screen or unilaterally remove a particular employee from their facilities is "the functional equivalent of the power to discharge" for the purposes of the Act. Id. at 255; Kelly, 671 A.2d at 636; Gore, 720 A.2d at 354.

The contract between USPS and Adams Trucking specifies a number of reasons that USPS could refuse an employee of Adams Trucking access to the mail. Therefore, the Court is satisfied that USPS retained the right to screen Plaintiff and to refuse him admission to its facilities. The fifth prong is therefore satisfied.

## IV.   CONCLUSION

Here, the Court finds that Plaintiff has presented sufficient evidence to survive summary judgment. When viewed in the light most favorable to Plaintiff, the record reveals that Defendant has met some, but not all, of the five prongs. Drawing all reasonable inferences in favor of Plaintiff and resolving all genuine disputes of material fact in Plaintiff's favor, this Court finds that when viewing the record as a whole, the evidence presented requires this Court to find in Plaintiff's favor with regard to the first and second factors of the special employer test adopted in Volb. As discussed above, the Court finds that no express or implied contract of hire existed between Plaintiff and USPS, and that though Plaintiff conducted business for the USPS's benefit, such work was also the sole province of Adams Trucking's business. Since these two factors, so essential to a finding of a special employment relationship, have not been met, the Court holds that Defendant has not carried its burden of proving as a matter of law that USPS was the special employer of Plaintiff for purposes of the New Jersey Workmen's Compensation Act. An appropriate order shall issue.

Date: 5/17/12                                                              /s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge